# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## H. A. WILLIAMS, JR., V. THE MARINE BANK OF NORFOLK.

### March 16, 1922.

#### Absent, Prentis and West, JJ.

1. WORDS AND PHRASES—*"Settle."*—The word "settle" is one of equivocal meaning, depending not only on the context in which it is used, but upon the subject matter and the facts and circumstances surrounding its use.

2. WORKING CONTRACTS—*Promise of Owner to Settle with the Bank —Case at Bar.*—In the instant case, defendant contracted with a firm of builders to build two houses for the price of $5,120. Immediately after the signatures to this contract, an indorsement was made by defendant at the request of the contractors to the effect that he would "settle above contract with" plaintiff bank.

   *Held:* That this indorsement did not constitute an unconditional promise on the part of defendant to pay the bank the sum of $5,120, the contract price, but was an undertaking on the part of plaintiff to make his settlement with the bank instead of the contractors.

3. WORKING CONTRACTS—*Promise of Owner to Settle with the Bank —Case at Bar.*—An owner of land indorsed on his contract for the construction of buildings on the land a promise to "settle" with a bank. This indorsement amounted to an agreement that whatever was coming to the builders under the contract should be paid to the bank.

   *Held:* That bills for materials that went into the houses were potential liens on such houses, which the builders could not defeat by any transfer or assignment (Code 1904, sec. 2482a), and that, as against the bank, the owner had the right to pay them off and use them as credits in his settlement under the contract, although no liens had at the time of payment of the bills been docketed against the property.

Error to a judgment of the Circuit Court of the city of

Norfolk in an action of assumpsit.   Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Thos. H. Willcox, Jas. G. Martin* and *H. B. G. Galt,* for the plaintiff in error.

*Tomlin & Maupin,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

The Marine Bank recovered a judgment against Williams for $5,120.00 in an action of assumpsit on a contract dated August 25, 1917.   The errors relied on for the reversal are the refusal of the trial court to set aside the verdict as contrary to the law and the evidence, and errors committed in granting and refusing instructions.

On August 25, 1917, Bundick & Carner, building contractors, entered into a written contract with Williams to furnish the materials and build for him two bungalows in the city of Norfolk for the price of $5,120.00, which amount Williams agreed to pay as follows: $200.00 when the houses were framed and raised, $200.00 when the roofs were on, and the balance in ten days after the completion of the buildings.

No time was fixed for the completion.   This contract was signed, C. A. Bundick and C. V. Carner, contractors, and H. A. Williams, owner.   Immediately under the signatures is the following, made at the request of the contractors: "Will settle above contract with the Marine Bank.   H. A. Williams, Jr."   This was a transfer by the contractors of Williams' obligation to pay.   The buildings were completed and delivered to Williams, and accepted by him some time in the summer of 1918.   The exact date at which the above addi-

tion was made to the contract does not appear, but it appears to have been made in the summer of 1918, on the request of Bundick & Carner.  These contractors were building a number of houses for Williams, as well as for other persons, and had a line of credit with the Marine Bank for probably something like $18,000.00, and they asked Williams to make the addition above mentioned for the purpose of raising money at the Marine Bank.  They then took the contract to the bank and executed a collateral note, using the contract as collateral, and borrowed money to pay lumber bills and pay rolls for the Williams houses and others.  The amount of this collateral note does not appear, but the lumber bills amounted to $1,200.00 or $1,500.00. The collateral note was in the usual form and made the collateral bound, not only for that note, but for any other indebtedness of Bundick & Carner to the bank.  Williams states that he did not know of the physical delivery of this contract to the bank until about four months before he testified in this case, and, when brought to his attention by the president of the bank, stated that he had forgotten all about it.  The president of the bank states that he brought it to Williams' attention about a year previous, but we do not regard that point as material.  On June 26, 1918, Williams negotiated a loan on these houses to be secured by a deed of trust thereon.  In order to get this loan, he had to pay off the bills for the materials that went into the houses, and he accordingly paid them, amounting to a large sum. During the progress of the work, he also executed notes to Bundick & Carner for different amounts, which showed that they were executed on account of these houses, and which were discounted by the Marine Bank.  Williams claims that he was compelled to pay for the material and labor used about the construction of his houses, in order to perfect the title to his property, as they were potential liens thereon and that he should have credit therefor on the contract

aforesaid, while the bank contends that it was a *tripartite* agreement between the parties and that he is not entitled to any such credit. It is not distinctly stated in the record, but the case seems to have proceeded on the *concessum* that Bundick & Carner are insolvent, and that at the time Williams paid for the materials the parties could have docketed liens therefor, but had not done so.

[1-3] The correct decision of the case is dependent largely on the proper construction to be put on the words of the addition to the contract signed by Williams: "Will settle above contract with Marine Bank." As Williams did not undertake, by the contract, to do anything but to pay the money called for by it, counsel for the bank insists that the addendum constituted an unconditional promise on the part of Williams to pay to the Marine Bank the sum of $5,120.00 ten days after the completion of the buildings, and this was manifestly the view of the trial court. If it erred in this respect, then the verdict should have been set aside as contrary to the law and evidence. The word "settle" is one of equivocal meaning, depending not only on the context in which it is used, but upon the subject matter and the facts and circumstances surrounding its use. In the case at bar, the bank had not only the imputed knowledge of the right of material men to docket liens for supplies, but from its location in a populous city where such liens were frequently acquired, it must have had actual knowledge of the existence of such right, and the inability of a general contractor by transfer or assignment to defeat it except by paying the bills. Williams, too, who was building many houses at this time, could hardly have been supposed to have been willing to contract to pay unconditionally the full price for building the houses, and leave unpaid all bills for labor, materials and supplies, with the right on the part of these persons to docket liens on his property. Furthermore, the parties themselves do not appear to have put that construc-

tion on the contract. When the contract was delivered to the bank, it was not accepted by it as a direct and unconditional contract to pay to it $5,120.00, but was taken as collateral, and instead of relying upon the promise to settle in the addendum, it took a collateral note, with the promise therein contained, and the contract as collateral. The president of the bank testified that the bank "took it as usual on a collateral note." It is manifest also that the bank expected some adjustment of differences between the builders and Williams, some ascertainment and agreement as to the amount due by Williams, some "settlement" between them before there would be anything coming to the bank. This appears from the testimony of the president of the bank, who was the only witness examined by it on this feature of the case. He testified, amongst other things, as follows:

"Q. Did you ever make any inquiries about the houses *:*

"A. I asked them (Bundick & Carner) constantly how Williams was getting along. They were building houses for him and could not get a settlement, and, as far as I knew, they couldn't get a settlement at all, they tell me.

   *   *   *   *

"Q. What advice did you receive regarding the completion of the houses?

"A. That they had not been settled for.

   *   *   *   *

"Q. How much money did you give them?

"A. * * * I knew they were building a great many houses for Mr. Williams, and as they got through building those houses they were getting pay rolls every day, and I couldn't tell what they were building, and I asked them from time to time what about these houses that the contracts had not been settled, so I considered that as a contract of Williams to pay me for whatever went into his houses.

   *   *   *   *

"Q. Did you advance any money that went into these two houses, so far as you know?

"A. Paid for that lumber that went into these two houses, as far as I know. As far as I know, I thought it all went into those houses, but it seems it didn't. That contract was regarded by the bank officials as security for $5,100.00 in Williams' houses. It said, 'I promise to settle with the bank,' and it means they are going to come to the bank and settle, and I understand he has not finished settlement with them yet." While Williams admits he had forgotten his promise to settle with the bank, that could not subject him to any greater liability than if he had not forgotten it. It seems fairly clear that the promise to "settle," as used in this case, was not a promise to pay the contract price for building the houses. The president of the bank does not so claim in his testimony. On the contrary, he "considered that as a contract of Williams to pay me for *whatever went into his houses.*" We think that the fair deduction from the testimony is that the addendum to the contract was not given or received as an unconditional promise to pay to the Marine Bank $5,120.00 ten days after the completion of the buildings, but was an undertaking on the part of Williams to make his settlement with the Marine Bank instead of with Bundick & Carner, and that whatever was coming to the latter should be paid to the bank; that the addendum to the contract was never given as an original undertaking to pay any greater sum; that the bills for materials that went into the houses were potential liens on such houses, which the general contractors could not defeat by any transfer or assignment (Code 1904, sec. 2482a), and that as against the bank, Williams had the right to pay them off and use them as credits in his settlement under the contract, although no liens had at the time of payment of said bills been docketed against Williams' property. The instructions given by the trial court were to the contrary,

and were, therefore, erroneous, and resulted in an erroneous verdict which will be set aside as plainly contrary to the law and evidence. We cannot tell from the record what judgment would be right and just. The verdict of the jury will, therefore, be set aside and the judgment of the trial court reversed, and the case be remanded to the trial court for a new trial to be had in conformity to the views hereinbefore expressed.

*Reversed.*